**ROBERT S. SOLA**
Oregon State Bar No. 844541
ROBERT S. SOLA, P.C.
1500 SW First Ave., Suite 800
Portland, OR 97201
T: (503) 295-6880
F: (503) 291-9172
rssola@msn.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **MARK NEUBAUER**, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>    v.<br><br>**EQUIFAX INFORMATION SERVICES LLC**,<br><br>    *Defendant*. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>(Fair Credit Reporting Act)<br><br>JURY TRIAL DEMANDED |

Plaintiff MARK NEUBAUER ("Neubauer"), on behalf of himself and all others similarly situated, brings this class action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x against Defendant EQUIFAX INFORMATION SERVICES LLC ("Equifax"), a national consumer reporting agency ("CRA").

Page 1 – COMPLAINT

## I.   PRELIMINARY STATEMENT

1. This case arises from Equifax's refusal to reinvestigate consumer disputes of "inquiry" information, in violation of one of the most fundamental protections afforded to consumers under the FCRA: the right to dispute inaccurate information and have that disputed information reinvestigated. Moreover, it undermines the accuracy of the information in consumer reports. Consumers often notice inaccurate information in a consumer report that the consumer reporting agency is not aware of. Through the dispute and reinvestigation procedure mandated by the FCRA, inaccurate information is removed from consumer reports. The dispute procedure is virtually the only way that a consumer can correct errors on a consumer report.

## II.   JURISDICTION AND VENUE

2. The Court has federal question jurisdiction pursuant to the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Equifax can be found in this District and regularly sells its products and services in this District.

## III.   PARTIES

4. Plaintiff Mark Neubauer ("Neubauer") is a resident of Canby, Oregon and is a "consumer" as defined by FCRA § 1681a(c).

5. Defendant Equifax Information Services LLC ("Equifax") is a limited liability company that regularly conducts substantial business in the State of Oregon.

6. Equifax is a consumer reporting agency as defined by FCRA § 1681a(f).

## IV.     FACTUAL ALLEGATIONS

*Consumer Reporting of "Inquiry" Information*

7.     When Equifax prepares a consumer report (commonly called "credit report") about a given person ("consumer"), it includes a list of persons and companies who, in the two years prior to the date of the report, obtained a consumer report about the consumer who is the subject of the instant report, along with their address(es) and the date(s) on which they obtained a consumer report. Each such combination of name, address, and date is known as an "inquiry."

8.     Inquiry information is included on a credit report because it is part of a consumer's credit history. Inquiries identify the persons and companies with whom the consumer sought credit and how often the consumer did so.

9.     Inquiries have a negative impact on a consumer's credit score because scoring programs view each inquiry as an application for credit, and a consumer who makes multiple applications is considered a greater risk than a consumer who does not.

10.     Inquiry information is often inaccurate, and inquiries may appear on a consumer's credit report notwithstanding the fact that the consumer did not actually seek credit. This can occur when a consumer is the victim of identity theft or when the reporting agency provides a consumer's report to a creditor who requested a report on a different person who may have a similar name.

11.     Including inaccurate inquiries on a consumer's credit report thus misrepresents that consumer's credit history and unfairly lowers the consumer's credit score.

*Consumers May Dispute Inaccurate Credit Information*

12.     Because inaccurate credit information can have significant negative effects on consumers, the FCRA empowers consumers to dispute inaccurate information in their credit reports.

13. For example, the FCRA provides that when a consumer notifies a CRA like Equifax that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file," Equifax must "*conduct a reasonable reinvestigation* to determine whether the disputed information is inaccurate and record the current status of the disputed information, *or delete the item from the file*" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

14. As part of the reinvestigation, Equifax must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2)(A).

15. Contacting the source is critical in doing a reasonable reinvestigation. In situations where the consumer is the victim of identity theft, the source may be aware of, or able to discover, the identity theft. Equifax might also be aware of identity theft regarding a fraudulent account opened with the source of the inquiry and able to relate the disputed fraudulent inquiry to the fraudulent account. In situations where the wrong consumer's report was provided to the source, the source may know it got a report on a consumer who is not the person it was dealing with; or it could check its records to determine if that occurred. Equifax can also reinvestigate such cases by comparing the identifying information for the consumer whose report was provided to see if it differs from the identifying information provided by the person who requested the credit report.

*Equifax Does Not Reinvestigate Consumer Disputes of Inquiry Information*

16. Equifax does none of these things. It does not reinvestigate the disputed inquiry. It does not notify the source about the consumer's dispute. It does not provide the source with all the relevant information about the dispute. And it does not delete the inquiry.

17.     Equifax has long been aware of its obligations to reinvestigate inquiry disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

18.     Regulatory guidance from the Federal Trade Commission explicitly addresses CRAs' statutory duty to reinvestigate disputed inquiries or delete them:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for obtaining the consumer report, and those allegations are supported by the CRA investigation, the CRA has two options. It may either delete the inquiry as inaccurate, or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer.

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, 77 (2011); https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

19.     Courts of Appeals throughout the country have held that CRAs must reinvestigate information in consumers' credit files, regardless of the context. *See Dennis v. BEH-1, LLC*, 520 F.3d 1067, 1070-71 (9th Cir. 2008) (CRA violated the FCRA when it failed to conduct a reasonable reinvestigation of court record information it included in a consumer's credit file); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); *Collins v. Experian Info. Sol's, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015) (a CRA violates the FCRA when it fails to do a reasonable reinvestigation of a consumer dispute of

"information contained in his file."); *Morris v. Equifax Info. Serv's, LLC*, 457 F.3d 460, 466-68 (5th Cir. 2006).

20. Additionally, over several years, district courts have repeatedly placed Equifax on notice that its failure to reinvestigate or delete disputed hard inquiries violates the FCRA.

21. In a 2016 decision, the Northern District of Georgia held that:

> [Requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's reinvestigation requirements—ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness[.] The interests of consumers and potential creditors are best served by deletion of hard inquiries that Equifax itself admits "misstate[ ]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is Equifax, which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax Information Services LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

22. In a 2021 decision in a different matter, the Northern District of Georgia echoed *Steed* when it held that:

> Accordingly, under the plain text of [FCRA section 1681i(a)(1)(A)], upon receiving a consumer dispute to the "completeness or accuracy" of an "item of information,"—here, a hard inquiry notation—Equifax "shall" conduct a "reasonable reinvestigation" to determine whether the hard inquiry notation is inaccurate and then record the status of the disputed information, or alternatively delete the hard inquiry notation.

*Rivera v. Equifax Information Services LLC*, No. 1:18-cv-4639-AT, 2022 WL 986443, at *9 (N.D. Ga. March 30, 2022) (internal citation omitted).

23. In a 2022 decision, the Eastern District of New York described the cost in wasted time and expense that results from Equifax's policy of refusing to reinvestigate or delete disputed inquiry information in consumer' credit reports:

> [C]ourts in other circuits "have routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish standing." For example, . . . a court in the Northern District of Alabama found that the lost time and money spent sending successive dispute letters to an agency that unlawfully failed to conduct a reasonable reinvestigation after an initial request constituted an injury in fact sufficient to confer standing. Here, Hines has similarly demonstrated that he made multiple futile attempts via the CFPB portal and via certified mail to dispute and obtain a reasonable reinvestigation of the unauthorized inquiry. This wasted time and expense is a traditional monetary harm that is fairly traceable to Equifax's policy of summarily categorizing and handling such disputes without a thorough investigation and without contacting the creditor responsible for the inquiry, and is redressable by judicial relief.

*Hines v. Equifax Information Services LLC*, No. 19-CV-6701-RPK-RER, 2022 WL 2841909, at *8 (E.D.N.Y. July 16, 2022) (internal citations omitted).

24.     In a 2023 decision against one of Equifax's competitors, Trans Union, the Eastern District of Pennsylvania held that a nearly identical policy of refusing to reinvestigate or delete disputed inquiry information could demonstrate a willful violation of the FCRA, for which statutory and punitive damages are available:

> Trans Union seeks to give § 1681i a narrow scope, arguing that the duty of reinvestigation only requires credit reporting agencies to notify a particular furnisher when a consumer disputes information provided by that furnisher as incomplete or inaccurate. According to Trans Union, a hard inquiry is not furnished information, but a factual record created internally by Trans Union to indicate that an end-user accessed the consumer's credit file, and the reinvestigation provision does not require the agency to convey non-furnished information like a hard inquiry dispute to any third party or, for that matter, to take any other action. . . . In its view, this is a reasonable reading of the FCRA's requirements and therefore not a willful violation under *Safeco*. *I cannot agree*.

*Norman v. Trans Union, LLC*, No. 2023 WL 2903976, at *23 (E.D. Pa. April 11, 2023) (emphasis added) (internal citations omitted).

*Voluminous Inquiry Disputes Reveal Other Flaws in Equifax's Procedures*

25. Consumer reports are full of sensitive personal and financial information that consumers rationally seek to withhold from persons and companies with whom the consumer does not have and does not seek a relationship.

26. For this reason, the FCRA restricts CRAs' "furnishing" (*i.e.*, sale) of consumer reports to a narrow range of "permissible" purposes.

27. Moreover, the FCRA contains requirements that CRAs "maintain reasonable procedures . . . to limit the furnishing of consumer reports" to those permissible purposes and prohibit a CRA from furnishing a consumer report "if it has reasonable grounds for believing that the consumer report will not be used for a [permissible] purpose[.]"

28. Indeed, the FCRA also penalizes the unauthorized *acquisition* of a consumer report.

29. Equifax receives hundreds of thousands of disputes of inquiry information each year in which consumers represent that Equifax provided a consumer report about them to a third party with which the consumer neither sought credit nor authorized that party to obtain a consumer report about them.

30. Despite this voluminous evidence, Equifax continues to provide consumer reports to the companies about which consumers have repeatedly complained.

*Equifax Does Not Block Reporting of Disputed Information Resulting from Identity Theft*

31. The FCRA requires that a CRA block the reporting of information that a consumer identifies as resulting from identity theft within 4 business days of receipt of appropriate proof of the identity of the consumer, a copy of an identity theft report, the identification of such information by the consumer, and a statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

32. Neubauer provided such information and an identity theft report to Equifax in regard to the Chase inquiry and the Citibank inquiry, but Equifax did not block the reporting of that disputed information.

*Equifax Reports Information that the FCRA Prohibits It from Reporting*

33. The FCRA contains provisions prohibiting CRAs from reporting certain information on credit reports to third parties, including reporting "a record of inquiries in connection with a credit transaction or insurance transaction that is not initiated by a consumer." 15 U.S.C. § 1681b(c)(3).

34. Yet, because Equifax does not reinvestigate or delete disputed inquiries, it repeatedly reports records of inquiries for credit transactions that are unauthorized and/or not initiated by the consumer to third parties with whom consumers legitimately seek credit or other business relationships, in violation of the FCRA, as it did regarding Neubauer.

35. Equifax's practices and procedures are clearly broken and unlawful. It fails to reinvestigate or delete disputed inquiries; it fails to block reporting of disputed inquiries resulting from identity theft; it fails to limit the disclosure of sensitive personal and financial information about millions of consumers to FCRA permissible purposes and fail to reign in repeat offenders who illegally obtain sensitive personal and financial consumer information without authorization; and it reports inquiries to third parties that the FCRA prohibits Equifax from reporting.

*Neubauer's Experience*

36. In or around late September 2021, Neubauer learned that two hard inquiries he had not authorized were appearing in his Equifax credit report: one listed as JPMCB-Card Services dated September 25, 2021 (the "Chase inquiry") and another listed as CBNA dated September 21, 2021 (the "Citibank inquiry").

37. Neubauer neither initiated nor authorized the Chase inquiry.

38. Neubauer neither initiated nor authorized the Citibank inquiry.

39. Neubauer also learned that someone had tried to open credit accounts using his identification.

40. Concerned about being the victim of identity theft, Neubauer disputed the Chase inquiry and the Citibank inquiry to Equifax through its website in late September or early October 2021 by clicking on a "Dispute this" link next to each of the unauthorized inquiries.

41. At all relevant times, Neubauer purchased internet access for $88.95 each month through Direct Link/Canby Telecom.

42. On or about October 9, 2021, Neubauer received a letter from Equifax in the mail in response to his disputes, in which Equifax stated, "INQUIRIES ARE A FACTUAL RECORD OF FILE ACCESS AND WILL REMAIN ON THE EQUIFAX CREDIT FILE TWO YEARS FROM THE REPORTED DATE OF THE INQUIRY." After this sentence, the Equifax correspondence identified the Chase inquiry and the Citibank inquiry.

43. Equifax did not reinvestigate the Chase inquiry and the Citibank inquiry, or contact Chase or Citibank to reinvestigate the disputed inquiries.

44. Neubauer again reviewed his Equifax credit report online and noted that, as before his dispute, the Chase inquiry and the Citibank inquiry remained in his credit report next to "Dispute this" links.

45. Again, Neubauer used both "Dispute this" links to dispute the Chase inquiry and Citibank inquiry.

46. On or about October 20, 2021, Neubauer received another letter from Equifax in response to his disputes, in which Equifax provided the same form response as in its

correspondence of October 9, 201, that "INQUIRIES ARE A FACTUAL RECORD OF FILE ACCESS AND WILL REMAIN ON THE EQUIFAX CREDIT FILE TWO YEARS FROM THE REPORTED DATE OF THE INQUIRY."

47. On or about October 20, 2021, Neubauer called Equifax to dispute the Chase inquiry and Citibank inquiry.

48. During the course of a lengthy conversation with Equifax representatives, Neubauer was told to contact JP Morgan Chase and Citibank to dispute the inquiries and to fill out an FTC Identity Theft report and mail it to Equifax with a written explanation of what he wanted removed from his Equifax credit report.

49. On or about October 20, 2021, Neubauer completed an FTC Identity Theft report in which he identified the fraudulent inquiries that were on his credit report.

50. On or about October 21, 2021, Neubauer sent a letter to Equifax in which he explained that he was the victim of identity theft and requested the removal of the Chase inquiry and the Citibank inquiry from his Equifax credit report. He enclosed a copy of the FTC Identity Theft report, his social security card and his driver's license.

51. On or about November 6, 2021, Neubauer called Equifax again. During another lengthy call with Equifax representatives, Neubauer was told that his FTC Identity Theft report was invalid.

52. On or about November 14, 2021, Neubauer filed a complaint about Equifax with the Oregon Department of Justice.

53. On or about November 18, 2021, Neubauer sent Equifax another dispute letter concerning the Chase inquiry and Citibank inquiry, and again enclosed the FTC Identity Theft report, his social security card and his driver's license.

Page 11 – COMPLAINT

54. On or about December 7, 2021, Neubauer received a letter from Equifax in which it stated that it "is not blocking information you named in your request, pursuant to Section 605B(c) of the Fair Credit Reporting Act." Separately, Equifax stated: "We are, however, contacting each company that provided the disputed information to verify the information on your behalf."

55. Equifax's statement that it was "contacting each company that provided the disputed information to verify the information on your behalf" was knowingly false. At no time did Equifax contact JP Morgan Chase or Citibank about Neubauer's disputes of the inquiries.

56. On or about December 21, 2021, Neubauer received a letter from Equifax with respect to his disputes of the Chase inquiry and the Citibank inquiry in which it stated, "Inquiries are a factual record of file access. Should you have reason to believe this inquiry was unauthorized, please contact the creditor directly and follow their internal fraud procedures."

57. On or about January 10, 2022, Neubauer reviewed his Equifax credit report online and learned that the Chase inquiry and the Citibank inquiry remained in his credit report.

58. On or about January 13, 2022, Neubauer received another letter from Equifax in which it stated that it would not block the Chase inquiry or Citibank inquiry from his credit report. Once again, Equifax falsely stated that "we are contacting each company that provided the disputed information[.]" At no time did Equifax contact JP Morgan Chase or Citibank with respect to Neubauer's disputes of the inquiries.

59. As of August 10, 2023, the Chase inquiry and the Citibank inquiry remained in Neubauer's credit file.

60. Notwithstanding ample notice that Neubauer had neither initiated nor authorized the Chase inquiry or the Citibank inquiry, Equifax published the Chase inquiry and the Citibank inquiry to one or more of Neubauer's current or prospective creditors and/or service providers,

including the Clackamas Federal Credit Union on December 22, 2021 and Verizon on December 14, 2021.

61.     As a result of Equifax's actions and omissions, Neubauer suffered, without limitation, the following injuries:

    A.     The continued presence of the Chase inquiry and the Citibank inquiry on his credit report and reduction of his credit score, harm that is ongoing as of the date of this Complaint;

    B.     The misrepresentation of his credit history and damage to his credit worthiness by indicating that he had sought credit with JP Morgan Chase and Citibank, and that he could have accounts and owe money to those companies;

    C.     Deprivation of the information that Equifax had not reinvestigated his dispute or contacted JP Morgan Chase or Citibank which, at a minimum, would have armed him with additional information concerning his creditworthiness;

    D.     The invasion of his privacy when Equifax provided a consumer report about him to JP Morgan Chase and Citibank without a permissible purpose;

    E.     Distress from Equifax not removing or blocking the disputed inquiries, ignoring his disputes, and getting the run around from Equifax concerning his disputes and what Equifax would actually do to investigate them; and

    F.     Lost time, labor, and resources expended in making multiple fruitless disputes of the Chase inquiry and the Citibank inquiry to Equifax.

*Equifax's Conduct is Deliberate and Calculated*

62.     Equifax recognizes its obligation to reinvestigate disputed information, including inquiries, by inviting consumers such as Neubauer to dispute inquiries through the "Dispute this"

link when viewing their credit reports on the Equifax website. Equifax also understands its obligation to contact the source of the disputed inquiry information as part of that reinvestigation, as is evident in the letters it sent to Neubauer in which Equifax stated that "we are contacting each company that provided the disputed information." Nevertheless, Equifax deliberately fails to comply with these legal requirements that it acknowledges it has. In its form response, Equifax tells the consumer to contact the source of the inquiry if the consumer believes it is unauthorized. The FCRA requires that Equifax, not the consumer, contact the source and reinvestigate disputed information.

63. Equifax's failure to reinvestigate disputed inquiry information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

64. Equifax willfully violated and continues to violate the requirements of the FCRA by failing to reinvestigate disputed inquiries, failing to notify the source of the inquiry about the consumer's dispute, and failing to notify disputing consumers that it did not, in fact, conduct any reinvestigation of the disputed inquiry information.

65. Equifax willfully violated and continues to violate the requirements of the FCRA by failing to maintain reasonable procedures designed to avoid the unauthorized dissemination of consumer reports, despite being put on notice of the problems with its procedures evident from the millions of consumer disputes of inquiry information that it has received in recent years.

66. Equifax willfully violated and continues to violate the requirements of the FCRA by failing to block the reporting of disputed information identified by consumers as resulting from identity theft, who provide Equifax with an identity theft report and other information that requires Equifax to block the reporting of the information.

67.     Equifax willfully violated and continues to violate the requirements of the FCRA by reporting to third parties the inquiries made in connection with a credit transaction or insurance transaction that is not initiated by a consumer.

## V.     CLASS ACTION ALLEGATIONS

68.     Based on Equifax's failure to comply with 15 U.S.C. § 1681i(a)(1) and (2), Neubauer seeks to represent the following class:

*Nationwide Failure to Reinvestigate Online Disputes Class*

All persons residing in the United States and its Territories who notified Equifax online of a dispute of a hard inquiry and to whom Equifax sent a communication similar in form and content to the "Inquiries are a factual record of file access" message it sent to Neubauer, during the period beginning two years prior to the filing of this Complaint and continuing through the date of class certification.

69.     Based on Equifax's failure to comply with 15 U.S.C. § 1681e(a), Neubauer seeks to represent the following class:

*National Class for Unreasonable Procedures*

All persons residing in the United States and its Territories for whom Equifax's records reflect the receipt of a dispute of a hard inquiry in which the disputing consumer stated that Equifax had provided a consumer report without a permissible purpose, during the period beginning two years prior to the filing of this Complaint and continuing through the date of class certification.

70.     Each of the classes is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Equifax, Equifax has represented that in recent years, it has received millions of consumer disputes of hard inquiries in which consumers variously state that the inquiries were not initiated by them or were the result of fraud or identity theft. Accordingly, Plaintiff believes that the classes have hundreds of thousands of members.

71. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Equifax violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

72. Neubauer's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories: a dispute to Equifax regarding an inquiry, Equifax's refusal to reinvestigate or delete the inquiry, Neubauer's receipt of dispute results from Equifax with standard form language, and Equifax's subsequent furnishing of the disputed inquiry to a third party. Neubauer's claim is typical of the two-year class because he made his dispute within two years of the filing of this Complaint.

73. Neubauer will fairly and adequately protect the interests of the classes. Neubauer is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims under the FCRA. Neither Neubauer nor his counsel have any interests that might cause them not to vigorously pursue these claims.

74. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Equifax's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Equifax, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Equifax's practices. Moreover, management of this action as a class action will not

present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

75. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*On Behalf of Plaintiff and the Nationwide Failure to Reinvestigate Online Disputes Class for Equifax's Violations of FCRA §§ 1681i(a)(1) and (2)*

76. Neubauer realleges and incorporates paragraphs 1 through 75 as though set forth at length herein.

77. Equifax willfully and negligently failed to comply with the requirements of FCRA sections 1681i(a)(1) and (2) by failing to (a) reinvestigate the disputed inquiry, notify the source of the inquiry about the dispute, and provide the source with all relevant information Neubauer provided to Equifax; or (b) delete the inquiries disputed by Plaintiff and class members.

78. Pursuant to FCRA sections 1681n and 1618o, Equifax is liable to Neubauer and all class members for the relief sought herein.

## SECOND CLAIM FOR RELIEF
*On Behalf of Plaintiff and the Nationwide Unreasonable Procedures Class
for Equifax's Violations of 15 U.S.C. § 1681e(a)*

79. Neubauer realleges and incorporates paragraphs 1 through 75 as though set forth at length herein.

80. Equifax willfully and negligently failed to comply with the requirements of FCRA section 1681e(a) by failing to maintain reasonable procedures to limit the furnishing of consumer reports to a permissible purpose and by furnishing consumer reports when it had a reasonable belief that the report would not be used for a permissible purpose.

81. Pursuant to FCRA sections 1681n and 1618o, Equifax is liable to Neubauer and all class members for the relief sought herein.

## THIRD CLAIM FOR RELIEF
*On Behalf of Plaintiff Individually
for Equifax's Violation of 15 U.S.C. § 1681c-2(a)*

82. Neubauer realleges and incorporates paragraphs 1 through 75 as though set forth at length herein.

83. Equifax willfully and negligently failed to comply with the requirements of 15 U.S.C. § 1681c-2(a) by failing to block reporting of the inquiries disputed by Neubauer in his dispute letters.

84. Pursuant to FCRA sections 1681n and 1618o, Equifax is liable to Neubauer for the relief sought herein.

## FOURTH CLAIM FOR RELIEF
*On Behalf of Plaintiff Individually
For Equifax's Violation of 15 U.S.C. § 1681b(c)(3)*

85. Neubauer realleges and incorporates paragraphs 1 through 75 as though set forth at length herein.

86. Equifax willfully and negligently failed to comply with the requirements of 15 U.S.C. § 1681b(c)(3) by reporting to third parties a record of inquiries in connection with a credit transaction or insurance transaction that was not initiated by Neubauer.

87. Pursuant to FCRA sections 1681n and 1618o, Equifax is liable to Neubauer for the relief sought herein.

## VII.   JURY TRIAL DEMAND

88. Plaintiff demands a jury trial on all claims.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Equifax as follows:

a. An order certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b. An order declaring that Equifax's actions are in violation of the FCRA;

c. Statutory damages in the amount of not less than $100 and not more than $1,000 per violation per class member, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d. Actual damages in an amount to be determined by the jury, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

e. Punitive damages to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2);

f. Attorney fees and costs, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

g. Such other relief as may be just and proper.

DATED:   August 31, 2023                    Respectfully submitted,

                                                                           */s/Robert S. Sola*
Robert S. Sola (Oregon State Bar No. 844541)
ROBERT S. SOLA, P.C.
1500 SW First Avenue, Suite 800
Portland, OR 97201
T: 503-295-6880
F: 503-243-4546
rssola@msn.com

Attorney for Plaintiff

Page 20 – COMPLAINT